ACME MANUFACTURING COMPANY v. PETER McQUEEN.

(Filed 25 March, 1925.)

**1. Judgment—Pleadings—Default and Inquiry—Damages.**

Where the court renders judgment by default for the want of an answer, and inquiry for the unliquidated damages, the plaintiff is at least entitled to nominal damages, and evidence tending to show a complete defense is not admissible.

**2. Partnership—Principal and Agent—Choses in Action—Collections— Misappropriation of Funds—Presumptions—Instructions—Appeal and Error.**

In an action against the surviving partner to recover for collections made by the partnership from its fertilizer purchasers under a contract making the partnership the agents of the plaintiff for the sale of the fertilizer, collect from its customers and apply the proceeds on the partnership notes given to the manufacturer, the evidence tended to show that the firm had collected moneys from some of its customers at various times and had not paid these collections to plaintiff under the contract, and that others had paid direct to plaintiff: *Held,* the extent of defendant's liability for wrongful conversion is to be measured by the value of the property actually converted, plus interest from the time of conversion, and it was error to shift the burden of proof to defendant on plaintiff's *prima facie* case. This was still a question for the jury, with the burden of the issue on plaintiff.

**3. Same—Interest.**

> And, under the evidence in this case, *held further*, reversible error for
> the trial judge, in his instructions, to fix a time for the running of in-
> terest in accordance with plaintiff's evidence alone, the transactions run-
> ning through a period of time, with evidence also to show that collections
> had been made at various times during that period.

APPEAL by defendant from *Grady, J.,* at October Term, 1924, of NEW
HANOVER.

Civil action, tried upon the following issues:

"1. What was the value of the fertilizer delivered by plaintiff to the
defendant for sale by defendant on plaintiff's account?    Answer:
'$2,995.17.'  (By consent.)

"2. What was the value of the fertilizer so delivered to the defendant
that was wrongfully and intentionally converted by defendant to his
own use?  Answer: '$2,995.17, with interest.'

"3. What is the amount paid to date by defendant to plaintiff on
account of fertilizers previously converted by defendant to his own use?
Answer: '$100 on 15 October, 1917; $200 on 29 October, 1917; $200
on 10 December, 1921; $1,006.70 on 1 September, 1923; $100 on 1
March, 1924.'"    (By consent.)

Judgment on the verdict for $2,995.17, "with interest from 28 Decem-
ber, 1915, together with the costs of this action, to be taxed by the
clerk," less the credits found in answer to the third issue.  Execution
to issue against the person if not paid as provided by law.  Defendant
appeals, assigning errors.

*C. D. Weeks and J. G. McCormick for plaintiff.*
*E. K. Bryan and K. O. Burgwin for defendant.*

STACY, C. J.  It will be observed from the verdict that the first and
third issues were answered by consent, leaving only the second issue to
be determined by the jury.  This issue imports liability to arrest.  *Coble
v. Medley,* 186 N. C., 479.

Early in 1915 the plaintiff entered into a contract with the partner-
ship firm of Tatum & McQueen, under the terms of which the said firm
became the agent of the plaintiff for the sale of certain fertilizers.  The
defendant, Peter McQueen, is the surviving partner of said firm; the
other partner, O. J. Tatum, having died prior to the institution of this
suit.  The action is to recover the amount of certain collections, or
choses in action, alleged to have been made or received by the defendant
as plaintiff's agent, and wrongfully converted to his own use.  There is
no dispute as to the value and amount of the fertilizers shipped under
the contract and the payments received by plaintiff from time to time.
These are fixed by the first and third issues, which were answered by

MFG. CO. *v.* McQUEEN.

consent. The real controversy between the parties arises over the question as to what sum or amounts have been collected or received by the defendant as plaintiff's agent and wrongfully appropriated to his own use, and from what date or dates should said sum or sums bear interest. The contract contains the following stipulation: "And all of the above-mentioned goods, as well as all notes and accounts and all other proceeds therefrom which may at any time be in your possession, are to be held by you, as our agent, in trust for the payment of your note or notes to us."

The defendant having failed to appear and answer the complaint filed by the plaintiff in this cause, there was a judgment by default and inquiry entered at the December Term, 1917, in'which it was adjudged "that the plaintiff recover of the defendant the value of said choses in action, with interest on the same from the time of their conversion, and that this cause be retained in order that a writ of inquiry may be set down and heard as to the amount of damages sustained by the plaintiff by reason of said conversion." The present appeal is from the trial had upon the execution of this writ of inquiry.

Plaintiff's right to recover at least nominal damages, on its cause of action alleging a wrongful conversion of its property, is established by the judgment of default and inquiry entered at the December Term, 1917. *McLeod v. Nimocks,* 122 N. C., 438. Speaking to the question, in *Blow v. Joyner,* 156 N. C., 140, it is said: "The authorities are very generally to the effect that where a complaint has been properly filed, showing a right of action for unliquidated damages, a judgment by default and inquiry establishes plaintiff's right of action, and that he is entitled at least to nominal damages. *Osborn v. Leach,* 133 N. C., 428; 2 Black on Judgments, sec. 698; 23 Cyc., 752; 6 Enc. Pl. and Pr., 127. And in this State it is further held that such a judgment concludes on all issuable facts properly pleaded, and that evidence in bar of plaintiff's right of action is not admissible on the inquiry as to damages," citing authorities for the position.

In dealing with the question of damages and the burden of proof on the second issue, the trial court instructed the jury as follows:

"Now, gentlemen of the jury, the burden is upon the plaintiff, Acme Manufacturing Company, to satisfy you by the greater weight of the evidence as to the amount and value of the fertilizers actually delivered to defendant under the contract; and if the plaintiff has offered evidence here which satisfies you by its greater weight that fertilizers were delivered to the defendant under this contract, and the amount thereof, and you find that fact to be true, then the burden would shift to the defendant, McQueen, and it would be his duty to satisfy you by the greater weight of the evidence as to what was done with this particular fer-

tilizer that he bought from the plaintiff, and what loss, if any, he has sustained by reason of his failure to make collection. In other words, it would be his duty to render an account of his trust.

"The defendant has not offered any evidence in this case at all, and, therefore, I charge you as a matter of law that if you find from this evidence, and by its greater weight, the burden being upon the plaintiff, that these four notes, aggregating $2,995.17, were made for fertilizers shipped and delivered to the defendant under the contract which has been offered in evidence, and that he received those fertilizers, then it would be your duty to answer this second issue '$2,995.17, with interest.' "

This instruction forms the basis of one of the defendant's exceptive assignments of error. We think the exception is well taken and that the instruction must be held for error.

His Honor was doubtless misled by what was said in *Guano Co. v. Southerland,* 175 N. C., 228, touching the subject of the burden of proof, but that case is quite unlike the present one. There the willful and deliberate conversion of certain property to the partnership business, by one member of the firm, was not seriously disputed. The question at issue was whether knowledge of the transaction was imputable to the other and surviving partner, who alone was being sued. The trial court instructed the jury that, the property having been wrongfully converted by one of the members of the partnership to the firm's business, the law would presume that the other partner had knowledge of it, requiring him to come forward with evidence to show the contrary, if he would escape liability from such conduct. This instruction was approved and was clearly correct under the facts of that case. The question of knowledge was peculiarly within his own information. *Hosiery Co. v. Express Co.,* 184 N. C., 478. But the point at issue here is quite a different matter. The extent of the defendant's liability under the second issue and under the default judgment is to be measured by the value of the property, or choses in action, wrongfully converted by the defendant. This must be shown by the plaintiff, and the date or dates of such conversion or conversions must be found by the jury, where the plaintiff is demanding interest, as it is here, on the value of the property so converted, and from the time of its conversion. *McLeod v. Nimocks, supra.* The plaintiff is not simply asking for a judgment on the contract, but it is also seeking to establish the defendant's liability in tort for the wrongful conversion of its property. *Organ Co. v. Snyder,* 147 N. C., 271; *Boykin v. Maddrey,* 114 N. C., 90.

There is evidence appearing on the record tending to show, not only certain wrongful conversions by the defendant, but also the approximate dates thereof—making out a prima facie case for the plaintiff—but this

did not shift the burden of proof to the defendant. See *Speas v. Bank,* 188 N. C., p. 529, where the matter is fully discussed. It was still a question for the jury on the plaintiff's evidence. *McDowell v. R. R.,* 186 N. C., 571; *Cox v. R. R.,* 149 N. C., 117. It does not follow as a matter of law, though the jury would have been warranted in so finding from the evidence in the case, that the defendant wrongfully and intentionally converted the fertilizers, or the collection from sales thereof, to his own use, simply because he offered no evidence on the hearing. He took the risk of an adverse verdict in failing to do so, but that is all. *Speas v. Bank, supra; White v. Hines,* 182 N. C., 275. In this respect there was error in the charge.

It was in evidence that some of the fertilizers were shipped directly from the plaintiff's factory to customers of the defendant, on orders from the defendant; and, while under the contract, the defendant bound himself to pay for such shipments, he would not be liable for same in tort, unless collections were made therefor and wrongfully converted to his own use. This was the question at issue on the trial. In *Guano Co. v. Southerland, supra,* the plaintiff was aided by a presumption of law imputing to one partner knowledge of the firm's business and what was done by the other partner in furtherance of that business, but in the present case there is no presumption of conversion arising from the evidence—only a permissible inference to that effect. Herein lies the distinction between the two cases. But as the default judgment, rendered herein, established the plaintiff's right to recover, at least nominal damages, on its action for conversion, the controversy reduced itself to a question of fact as to what should be the jury's answer to the second issue. The above instruction, we think, was prejudicial to the defendant in view of the evidence appearing in the case.

Again, we find nothing on the record which would seem to warrant his Honor in fixing 28 December, 1915, as the date from which the alleged misappropriations or the value of the properties converted should draw interest. This was a matter for the jury. *Bond v. Cotton Mills,* 166 N. C., 20. True, the answer to the second issue is "$2,995.17, with interest," but the date is not specified. Conceding that the plaintiff's evidence tended to establish 28 December, 1915, as the date from which interest might properly be allowed, still the date was important, the interest running, as it does, over a long period of time, and this was a matter for the jury to determine. *Harper v. R. R.,* 161 N. C., 451.

The remaining exceptions are not likely to be presented on another hearing, and we shall not consider them now.

For error in the charge, as indicated, there must be a new trial, and it is so ordered.

New trial.